UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF WISCONSIN

STEPHEN HALL,

      Plaintiff,

v.                   Case No. 21-cv-1056-pp

LT. ABBIGATE WILD, *et al.*,

      Defendants.

**ORDER DENYING AS MOOT PLAINTIFF'S MOTION FOR LEAVE TO PROCEED WITHOUT PREPAYMENT OF THE FILING FEE (DKT. NO. 2) AND SCREENING COMPLAINT UNDER 28 U.S.C. §1915A**

  Stephen Hall, who is incarcerated at Waupun Correctional Institution and is representing himself, filed a complaint under 42 U.S.C. §1983, alleging that the defendants violated his rights under federal and state law when he was confined at the Waukesha County Jail. The plaintiff has paid the full filing fee.[1] This decision screens his complaint, dkt. no. 1.

**I. Screening the Complaint**

  A. <u>Federal Screening Standard</u>

  Under the PLRA, the court must screen complaints brought by incarcerated persons seeking relief from a governmental entity or officer or employee of a governmental entity. 28 U.S.C. §1915A(a). The court must

---

[1] On April 25, 2022, the court dismissed the case for failure to pay the $53.71 initial partial filing fee. Dkt. No. 14. The plaintiff subsequently paid the fee and filed a motion to reopen the case, dkt. no. 17, which the court granted, dkt. no. 19. After the court reopened the case, the plaintiff paid the balance of the filing fee. Dkt. No. 20. The court will deny as moot the plaintiff's motion for leave to proceed without prepayment of the filing fee. Dkt. No. 2.

dismiss a complaint if the incarcerated plaintiff raises claims that are legally "frivolous or malicious," that fail to state a claim upon which relief may be granted, or that seek monetary relief from a defendant who is immune from such relief. 28 U.S.C. §1915A(b).

In determining whether the complaint states a claim, the court applies the same standard that it applies when considering whether to dismiss a case under Federal Rule of Civil Procedure 12(b)(6). See Cesal v. Moats, 851 F.3d 714, 720 (7th Cir. 2017) (citing Booker-El v. Superintendent, Ind. State Prison, 668 F.3d 896, 899 (7th Cir. 2012)). To state a claim, a complaint must include "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). The complaint must contain enough facts, accepted as true, to "state a claim for relief that is plausible on its face." Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (quoting Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 570 (2007)). "A claim has facial plausibility when the plaintiff pleads factual content that allows a court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Id. (citing Twombly, 550 U.S. at 556).

To state a claim for relief under 42 U.S.C. §1983, a plaintiff must allege that someone deprived him of a right secured by the Constitution or the laws of the United States, and that whoever deprived him of this right was acting under the color of state law. D.S. v. E. Porter Cty. Sch. Corp., 799 F.3d 793, 798 (7th Cir. 2015) (citing Buchanan–Moore v. Cty. of Milwaukee, 570 F.3d 824, 827 (7th Cir. 2009)). The court construes liberally complaints filed by

plaintiffs who are representing themselves and holds such complaints to a less stringent standard than pleadings drafted by lawyers. Cesal, 851 F.3d at 720 (citing Perez v. Fenoglio, 792 F.3d 768, 776 (7th Cir. 2015)).

B.     The Plaintiff's Allegations

The plaintiff alleges that he was incarcerated at the Waukesha County Jail when the events described in the complaint occurred. Dkt. No. 1 at 2. He has sued Lieutenant Abbigale Wild, Lieutenant Gahn, Sheriff Eric Severson, Officers Belling, Miller, Rach, L. Johnson, Reuter, Wynne, Pendley, Chmielewski, Glazier and John Doe and Jane Doe Nurses 1 and 2. Id. at 1-2.

The plaintiff alleges that on November 10, 2021, he had returned to the jail from the hospital when an officer came to his cell and told him he needed to come with her for a medical assessment. Id. at ¶10. The plaintiff states that he refused the medical care, as he says he had a constitutional right to do, because he felt fine, and he told the officer that. Id. The officer allegedly returned with Wild and, after the plaintiff again refused medical treatment, she screamed profanities such as, "Pack your fucking shit Hall!" and "Niggers like you don't deserve to live." Id. at ¶11. The plaintiff alleges that Wild threatened to use force to take him to "medical," and she left and returned with Belling, Miller, Rach, Reuter, Johnson, Pendley, Chmielewski, Glazier and Wynne. Id. at ¶12.

The plaintiff states that after he explained a third time that he had the right to refuse medical attention, that he felt fine and that he had done nothing to warrant a cell entry, the officers threatened to use force and then rushed

3

into his cell using "ASP Pads" as shields. Id. at ¶13. According to the plaintiff, he had his hands in the air, but he lowered them to block Belling's force and lost his balance. Id. at ¶14. Rach allegedly charged the plaintiff and pushed him into the wall, Belling secured his arm while Rach had the other arm and then Wild ran in yelling "Taser!" and shot the plaintiff in the chest. Id. The plaintiff says, "it was known that [he] had a heart condition" and he fell to the ground and was punched, kicked and struck several times. Id. at ¶15. He alleges that his arms and legs were manacled while Miller, Reuter, Johnson, Pendley, Chmielewski, Glazier and Wynne "either filed into the cell and joined in the continued beating, kicking and twisting of Hall's wrist and ankles, or stood watching, and failing to intervene as the beating continued as Hall screamed in pain." Id. The plaintiff states that while this was happening, an officer put his boot on the side of the plaintiff's face, kicking him and causing his face to be scraped on the concrete floor. Id. at ¶16. The plaintiff says the officer then knelt on his head and pressed his thumb into the nerve behind the plaintiff's ear lobe, which caused him to scream and jerk. Id. The plaintiff then heard a female voice—he believes it was Wild—say, "Thought your ass was untouchable, huh. Well this is what we do to smart asses like you around here." Id. at ¶17. The plaintiff alleges that two male officers then grabbed his arms and pulled him up, but he was in extreme pain, could not walk and collapsed. Id. at ¶18. The officers allegedly picked him up again, bent his wrists to an extreme degree and said, "I said fucking walk nigger," but all he could do was scream in pain. Id. The plaintiff states that eventually several officers

4

carried him on their shoulders down the stairs. Id. at ¶19. He says that one male officer, holding his shoulder, whispered, "Move and I'll fucking drop you." Id.

The plaintiff alleges that he did not resist as he was placed in a restraint chair yet Wild ground her boot into his bare feet as he screamed. Id. at ¶20. The plaintiff was placed in cell GH2. Id. He says he was left in the cell for about thirty minutes during which time he screamed of chest, shoulder, head, ankle and "all around pain." Id. at ¶22. Nurse Jane Doe 1 allegedly came in with several officers and looked at the plaintiff, said "he's fine," and left. Id. The plaintiff states that he continued to scream and twenty minutes later, Nurse Jane Doe 1 returned and had the officers move his arm to the front as someone from behind him slammed his head downward causing intense pain and pressure to his neck, even though he showed no resistance. Id. After the nurse and officers left, the plaintiff allegedly kept screaming that he needed to go to the hospital because was bleeding from his nose, mouth, chest and the abrasions on his body. Id. at ¶23. He alleges that about twenty minutes later, Wild, several officers and Nurses Jane Doe 1 and 2 arrived. Id. The plaintiff states that the nurses tried to take his vitals and Wild slammed his head down from behind causing intense pain as she told him to stop resisting. Id. at ¶24. He says he told them to "get the hell off" but they continued for a couple minutes, and this happened at least two more times. Id. The plaintiff alleges that he was taken to the hospital where several x-rays were taken, pain medication was dispensed and his wounds were cleaned and bandaged. Id. at

5

¶25. He says he had swelling on his face and other body parts, and he had a black eye. Id.

The plaintiff alleges that when he returned the jail, Gahn, Officer John Doe and six or seven other correctional officers threw him in a padded cell. Id. at ¶26. He says he asked Gahn for property items like a shirt, shoes, sheets or a blanket, a bed and to use the toilet and to turn on the heat because it was very cold. Id. Officer John Doe 1 allegedly pulled the plaintiff's hand and cuffed it to the door handle without double locking it and he walked off, ignoring the plaintiff's requests to use the bathroom, and for property items. Id. The plaintiff states that the cuffs got so tight they pretty much cut off circulation in his hand and pierced/cut into his skin. Id. at ¶27. He says after he yelled for about twenty minutes, "they" returned and uncuffed him. Id. According to the plaintiff, he noticed a strong order of urine, sticky substances and filth on the floor; he continued to ask to use the bathroom. Id. at ¶28. The plaintiff says that he urinated and defecated in the corner and that he had to sleep in the same cold and smelly cell. Id. The plaintiff allegedly told the officer doing rounds that he defecated in the corner and needed cleaning supplies, but none were given. Id.

The plaintiff alleges that Gahn and John Doe put him in the cell on November 10, 2021 at 10:30 p.m., and that he exited the cell the next day at 3:00 p.m. Id. at ¶29. He says he was placed in a standard cell and placed on "AdSeg-Shower protocol," which meant he was locked in his cell twenty-four hours a day for about thirty days with no time out for recreation and only let

6

out for showers two to three times per week, which he says violates due process and Wis. Stat. §302.40. Id.

The plaintiff claims that Wild, Belling, Wynne, Miller, Rach, Johnson, Reuter, Chmielewski, Pendley and Glazier used unnecessary physical force or failed to intervene in the use of physical force, in violation of Constitution, and that these actions also constituted assault and battery under Wisconsin state law. Id. at ¶31. He also claims that Wild, Belling, Wynne, Miller, Rach, Johnson, Reuter, Chmielewski, Pendley, Glazier and Nurse Jane Doe 1-2 used physical force to force a medical assessment in violation of the plaintiff's constitutional right to refuse medical care. Id. at ¶32. The plaintiff claims that Sheriff Severson is responsible for the care of prisoners and jail conditions pursuant to Wis. Stat. §302.37. Id. at ¶33. And he claims that Gahn and John Doe Officer failed to double lock his handcuffs and refused to provide clothing, bedding, heat, a toilet and a clean cell in violation of the Constitution. Id. at ¶34. The plaintiff claims that the defendants' failure to follow several promulgated policies, such as Wis. Stat. §302.384 (the procedure if incarcerated individual refuses appropriate medical care), DOC §311.10 (medical placement) and others like using a camera during a cell extraction constitutes the tort of negligence under Wisconsin state law. Id. at ¶35. For relief, the plaintiff seeks declaratory relief, injunctive relief, compensatory damages and punitive damages. Id. at 7-8.

C. <u>Analysis</u>

The plaintiff has sued Sheriff Eric Severson in his individual capacity, but he has not alleged that Severson participated in any of the events described in the complaint. Section 1983 limits liability to public employees who are personally responsible for a constitutional violation. <u>Burks v. Raemisch</u>, 555 F.3d 592, 595-96 (7th Cir. 2009). For liability to attach, the individual defendant must have caused or participated in a constitutional violation. <u>Hildebrandt v. Ill. Dep't of Nat. Res.</u>, 347 F.3d 1014, 1039 (7th Cir. 2003). Regarding supervisors, the personal responsibility requirement is satisfied if the constitutional deprivation occurs at the supervisor's direction or with the supervisor's knowledge and consent. <u>Id.</u> In other words, the supervisor "must know about the conduct and facilitate it, approve it, condone it, or turn a blind eye." <u>Id.</u> (quoting <u>Gentry v. Duckworth</u>, 65 F.3d 555, 561 (7th Cir. 1995)). The plaintiff has not alleged that Severson had any involvement in the conduct described in the complaint and therefore cannot proceed against him.

1. *Excessive Force Allegations*

The Fourteenth Amendment applies to excessive force claims brought by pre-conviction detainees and the standard is solely objective. <u>Hardeman v. Curran</u>, 933 F.3d 816, 822 (7th Cir. 2019) (quoting <u>Kingsley v. Hendrickson</u>, 576 U.S. 389, 396-97 (2015)). "[A] pretrial detainee must show only that the force purposely or knowingly used against him was objectively unreasonable." <u>Kingsley</u>, 576 U.S. at 396-97. Objective reasonableness turns on the "facts and circumstances of each particular case." <u>Kingsley</u>, 576 U.S. at 397 (quoting

8

Graham v. Connor, 490 U.S. 386, 396 (1989)). The plaintiff has alleged sufficient facts to allow him to proceed on an excessive force claim against defendants Wild, Belling, Miller, Rach, Reuter, Johnson, Pendley, Chmielewski, Glazier and Wynne based on allegations that they used unnecessary force and/or failed to intervene in the use of force when, on November 10, 2021, they entered his cell, carried him to the restraint chair and placed him in the restraint chair. The plaintiff also has stated sufficient facts to proceed on an excessive force claim against Wild for allegedly slamming his head down during the time he was in the restraint chair while Nurses Jane Doe 1 and 2 tried to take his vitals.

The court also will allow the plaintiff to proceed on his state law claim of assault and battery under its supplemental jurisdiction. See 28 U.S.C. §1367(a). Under Wisconsin law, a battery or assault and battery is an unauthorized intentional contact with another. See Craig v. Klemmer, No. 17-CV-288-JPS, 2017 WL 1067778, at *3 (E.D. Wis. March 21, 2017) (citing McCluskey v. Steinhorst, 45 Wis. 2d 350, 357, 173 N.W.2d 148 (1970)). At this early stage, the plaintiff's allegations that Wild, Belling, Miller, Rach, Reuter, Johnson, Pendley, Chmielewski, Glazier and Wynne used unnecessary physical force against him state a claim under state law.

2. *Right to Refuse Medical Treatment Allegations*

Incarcerated persons have a qualified right under the Due Process Clause of the Fourteenth Amendment to refuse certain forms of medical treatment. See Washington v. Harper, 494 U.S. 210, 213 (1990); Knight v.

9

Grossman, 942 F.3d 336, 340-41 (7th Cir. 2019). To state a Fourteenth Amendment substantive due process claim related to forced medical treatment, the plaintiff would need to allege facts suggesting that the defendants were "deliberately indifferent" to his right to refuse medical care. Knight, 942 F.3d at 343. A medical provider is deliberately indifferent to an incarcerated person's right to refuse treatment if the medical provider knows that the incarcerated individual did not consent to treatment, but the provider forces him to receive treatment anyway. Id. Neither negligence nor gross negligence is enough to support a substantive due process claim, which must be so egregious as to "shock the conscience." Cty. of Sacramento v. Lewis, 523 U.S. 833, 848-49 (1998); McDowell v. Vill. of Lansing, 763 F.3d 762, 766 (7th Cir. 2014).

The plaintiff has not met this standard. He first alleges that after he returned to the jail from the hospital (the plaintiff does not say why he was at the hospital), Wild approached his cell and ordered him to come with her for a "medical assessment" and the plaintiff refused. While the plaintiff states a claim for the use of force during and after the cell entry, he has not alleged that Wild or any other defendant forced him to receive medical treatment (or even, for that matter, a medical assessment) as initially requested by Wild. The plaintiff claims that *after* the use of force, the officers and Nurses Jane Doe 1-2 conducted a medical assessment, however, he alleges that this occurred after he had been screaming in pain and requesting to go to the hospital because of his injuries from the cell entry. By this time, the plaintiff says, he *wanted* medical care, he received it and he went to the hospital. The plaintiff has not

10

stated a due process claim for forced medical treatment and the court will dismiss Nurses Jane Doe 1 and 2 because the plaintiff has not alleged that they used excessive force or had involvement in any other part of the events he describes in the complaint. The plaintiff's conclusory allegation that Wild, Belling, Wynne, Miller, Rach, Johnson, Reuter, Chmielewski, Pendley and Glazier failed to follow Wis. Stat §302.384[2] (the procedure if prisoner refuses appropriate medical care), does not constitute negligence under Wisconsin state law.

### 3. *Conditions of Confinement Allegations*

A pretrial detainee's constitutional rights may be violated when jail officials act unreasonably to objectively serious living conditions that deprive the detainee of basic human needs. See Smith v. Dart, 803 F.3d 304, 309-10 (7th Cir. 2015) "[T]he Fourteenth Amendment's Due Process Clause prohibits holding pretrial detainees in conditions that 'amount to punishment.'" Id.

---

[2] That statute provides in relevant part:

> (2m) A sheriff, jailer, keeper of any prison, jail or house of correction and the arresting officer are immune from civil liability for any acts or omissions that occur as the result of a good faith effort to allow a prisoner to refuse appropriate care or treatment if all of the following occur:
> (a) A sheriff, jailer, keeper or officer arranges for a health care professional to observe the prisoner.
> (b) The health care professional informs the prisoner of the availability of appropriate care or treatment.
> (c) The health care professional indicates on records kept by a sheriff, jailer, keeper or officer that appropriate care or treatment was offered and that the prisoner refused that care or treatment.

Wis. Stat. Ann. § 302.384 (West).

(quoting Bell v. Wolfish, 441 U.S. 520, 535 (1979)). "A pretrial condition can amount to punishment in two ways: first, if it is 'imposed for the purpose of punishment,' or second, if the condition 'is not reasonably related to a legitimate goal—if it is arbitrary or purposeless—a court permissibly may infer that the purpose of the government action is punishment.'" Id. (quoting Bell, 441 U.S. at 538–39). To prevail on his claim that the conditions of pretrial confinement violate the Constitution, a detainee must prove that (1) the conditions in question are or were objectively serious; (2) the defendant acted purposefully, knowingly, or recklessly with respect to the consequences of his actions; and (3) the defendant's actions were objectively unreasonable—that is, "not rationally related to a legitimate governmental objective or . . . excessive in relation to that purpose." Kingsley v. Hendrickson, 576 U.S. 389, 398 (2015).

The plaintiff has stated sufficient facts to allow him to proceed on a claim that Gahn and Officer John Doe subjected him to unconstitutional living conditions based on his allegations that they initially failed to double lock his handcuffs and placed him in a dirty padded cell without clothing, bedding, heat or a toilet and that they did not let him use the bathroom before he entered the cell. The plaintiff will need to use discovery to identify the John Doe defendant.

The plaintiff also alleges that after being released from the padded cell, he was placed on "AdSeg-Shower protocol" for thirty days, but he does not state who placed him on that status. Thus, the plaintiff may not proceed on a claim based on his time in AdSeg.

## II. Conclusion

The court **DENIES AS MOOT** the plaintiff's motion for leave to proceed without prepayment of the filing fee. Dkt. No. 2.

The court **DISMISSES** defendants Eric Severson and Nurse Jane Does 1-2.

The court **ORDERS** the U.S. Marshals Service to serve a copy of the complaint and this order on defendants Lt. Abbigate Wild, Lt. Gahn, CO Belling, CO Miller, CO Rach, CO Reuter, Officer L. Johnson, CO Wynne, CO Pendley, CO Chmielewski and CO Glazier under Federal Rule of Civil Procedure 4. Congress requires the U.S. Marshals Service to charge for making or attempting such service. 28 U.S.C. §1921(a). Although Congress requires the court to order service by the U.S. Marshals Service, it has not made any provision for either the court or the U.S. Marshals Service to waive these fees. The current fee for waiver-of-service packages is $8.00 per item mailed. The full fee schedule is provided at 28 C.F.R. §§0.114(a)(2), (a)(3). The U.S. Marshals Service will give the plaintiff information on how to remit payment. The court is not involved in collection of the fee. The court **ORDERS** those defendants to file a responsive pleading to the complaint.

The court **ORDERS** that the parties must not begin discovery until after the court enters a scheduling order setting deadlines for discovery and dispositive motions.

The court **ORDERS** that plaintiffs who are incarcerated at Prisoner E-Filing Program institutions must submit all correspondence and case filings to

13

institution staff, who will scan and e-mail documents to the court. Plaintiffs who are incarcerated at all other prison facilities must submit the original document for each filing to the court to the following address:

> Office of the Clerk
> United States District Court
> Eastern District of Wisconsin
> 362 United States Courthouse
> 517 E. Wisconsin Avenue
> Milwaukee, Wisconsin 53202

DO NOT MAIL ANYTHING DIRECTLY TO THE JUDGE'S CHAMBERS. It will only delay the processing of the case.

The court advises the plaintiff that if he fails to file documents or take other required actions by the deadlines the court sets, the court may dismiss the case based on his failure to diligently pursue it. The parties must notify the clerk of court of any change of address. The court advises the plaintiff that it is his responsibility to promptly notify the court if he is released from custody or transferred to a different institution. The plaintiff's failure to keep the court advised of his address may result in the court dismissing this case without further notice.

Dated in Milwaukee, Wisconsin, this 27th day of January, 2023.

**BY THE COURT:**

_____
**HON. PAMELA PEPPER**
**Chief United States District Judge**